UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Taveio Rauol Bilal Boston, #347753, | ) | C/A No.: 5:14-cv-4473-MGL-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Reynolds, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Taveio Rauol Bilal Boston ("Petitioner") is a state prisoner who filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 25, 26. On May 7, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 27. Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment on September 2, 2015. ECF No. 43. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be granted.

I.      Background

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In March 2011, Petitioner was indicted by a

Darlington County Grand Jury for two counts of murder (2011-GS-16-0371; 2011-GS-16-0372) and one count of assault and battery with intent to kill ("ABWIK") (2011-GS-16-0370). App 4; 84-88.[1] On September 14, 2011, Petitioner pleaded guilty to all counts before the Honorable Paul M. Burch. App. 1-28. During his plea, Public Defender Richard Jones represented Petitioner, and Deputy Solicitor Kernard E. Redmond appeared on behalf of the State. App. 1. Judge Burch sentenced Petitioner to 20-years imprisonment for the ABWIK conviction and 36-years imprisonment for both murder convictions, instructing the sentences run concurrently. App. 26. Petitioner did not file a direct appeal of his convictions or sentences.

II.    Procedural History

On June 12, 2012, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging "ineffective assistance of counsel" and "prosecutor misconduct allegation." App. 29-32. In an Attachment, Petitioner raised 16 ineffective assistance of counsel claims and two prosecutorial misconduct claims. App. 37-42. Petitioner raised the following claims verbatim:

Ineffective Assistance of Counsel Allegations

1. Petitioner asserts that his plea was involuntary.
2. Petitioner states the material claim that counsel was clearly ineffective for not not going over discovery material with Petitioner after repeated demands. The with holding of evidence by counsel denied Petitioner of his due process rights, and Petitioner can now state that his plea was not knowingly, Intelligently, and Voluntary made because Applicant was without material/evidence to properly make a inform intelligent decision.
3. Applicant fifth, sixth, and fourteenth Amendment was violated by counsel failure to give Applicant Rule 5 and failure to advise applicant on evidence in discovery.
4. Counsel was ineffective for not explaining in depth the full meaning of trial. In which Petitioner did not fully understand the meaning of a trial. Petitioner told counsel that he had not wanted trial, due to the knowledge he obtained and meaning of a trial. Petitioner thought trial was only to prove innocence or guilt, however Petitioner wanted to prove that the elements of the crime was manslaughter and not murder. If not been for counsel's ineffectiveness, Petitioner would have went to trial.

---

[1] Citations to "App." refer to the Appendix for Petitioner's plea transcript and Post-Conviction Relief Proceeding documents. That appendix is available at ECF No. 26-1 in this habeas matter.

5. Counsel was ineffective for advising to plea without disclosure of Rule 5. Counsel was ineffective for allowing solicitor to solicit a plea agreement on the defendant relinquishing petitioner's right to discovery in petitioner's criminal case. Rule 3.4 RI. DE, Rule 407 SCACR. Petitioner claims that if he would have had access or had been exposed to prosecutor's file he would of went to trial. If not had been for counsel's ineffectiveness, Petitioner would have chosen to go to trial.

6. Counsel was ineffective by rendering erroneous advice. thus making plea involuntary. Counsel told petitioner to falsely answer the questions were just court formality. If not had been for counsel's ineffectiveness, petitioner would have went to trial.

7. Petitioner asserts that defense counsel's erroneous advice that defendant would receive a maximum of 2 consecutive life sentences if he proceeded trial, therefore constitutes ineffective assistance and rendered guilty plea invalid. If not had been for counsel's ineffectiveness Petitioner would have went to trial.

8. Counsel failed to investigate Petitioner's medications when Petitioner asked numerous times.

9. Counsel failed to adequately prepare Petitioner's case.

10. Petitioner asked counsel "What happens if I go to trial" and counsel replied "you will get two consecutive life sentences." Petitioner really had the intentions of going to trial, but his counsel didn't even know Petitioner was in the county and had just transferred to the county from the Department of Juvenile Justice (DJJ). Counsel was just visiting other inmates and petitioner asked can he speak with him on his case of going to trial. Counsel said "you either are going to plea September 12th or go to trial November 17th." So petitioner asked "if I plea on the 12th of September can I put in for an appeal." Counsel replied "No you have to do the whole time you plead too, no parole or nothing." So petitioner asked for his Rule #5 and the counsel said it would take one week, but petitioner never received it. If petitioner would have received his Rule 5, he would of went to trial.

11. On March 9th of 2011, petitioner went up for a bond hearing, but the Judge was also doing plea bargains. This was the 2nd time Petitioner and counsel met up. Bond was denied, so petitioner was placed in a conference room to wait being transferred back to DJJ and an unfimilar face and Petitioner's counsel came in and said "Are you going to plea to this 40 years, because we're trying to get you out of the way, so you need to think while the Judge is on lunch break." Petitioner said "This is my life and we're talking about 40 years of it, so I need way more than a lunch break to think about this." The unfamiliar face replied "you plea now, we count your time you already did, you'll be like in your late 50's or early 60's when you come home, I mean look at your grandfather, he's how old?." Petitioner replied "He's 63." Unfamiliar face said "look at him he's moving, good, you'll be like him when you come home." Petitioner looked at him crazy and said "I'm not pleading, so ya'll can (just send me back to DJJ." Petitioner felt like he was being rushed.

12. Counsel and Petitioner met once again and Petitioner told counsel to look through his evaluations, medical files, and his life history to see if there was some errors. Counsel said "Did you do the crime?." Petitioner replied "yes." Counsel

3

replied "then that's all that matters and they only found something on your brain that starts with a P and it's normal, so you are guilty." Counsel failed to look inside medical history, evaluation, and life history. If counsel would have did so, Petitioner would have went to trial.

13. Petitioner's family tried to get in touch with Petitioner's counsel numerous times at his office by leaving messages, but counsel never returned calls or anything.

14. Counsel failed to discuss case with Petitioner, everytime they met, he wanted petitioner to just plea.

15. Counsel told Petitioner he had three choices and the choices were "an open plea 30 to life, 40 years, and a recommendation of 40 years." But counsel explained each choice and he said "I think you should plea to the recommendation of 40 years, because the judge can't give you over 40 years, he can either give you 40 years or under." But when Petitioner got in front of the judge on his sentencing day the judge said "Now you know by this recommendation of 40 years I can either give you over 40 years or under 40 years, Mr. Boston." Counsel lied to Petitioner and if Petitioner would have knew that, he would have just went to trial.

16. Counsel also told Petitioner "your going to end up like my other 17 year-old client John Bridges, because he waited to long to plea and he got 45 years." Petitioner was incarcerated with John Brides since they both were 14 in DJJ. Petitioner felt like counsel was trying to use that statement to make him plea faster.

Prosecutorial Misconduct Allegation

1. Petitioner asserts that prosecuter threaten and forced Petitioner to plea, thus making petitioner's plea involuntary.

2. The Solicitor stated "if you don't plea today, I'll give you the 180 days that the judge gave you to await another bond hearing to think bout my plea offer. But I promise I will take you to trial, if you don't plea before your 180 days is up." Petitioner's counsel was present and so was his father and grandparents. The Solicitor said that the only reason he didn't take Petitioner to trial then was because his wife was pregnant. But Solicitor made sure to Petitiner that if he went to trial, he'll make sure Petitioner would spend the rest of his life in prison.

App. 37-42. On August 23, 2012, the State filed a Return and requested an evidentiary hearing. App. 43-46. An evidentiary hearing was conducted before the Honorable R. Ferrell Cothran, Jr., on July 15, 2013. App. 47. Petitioner was present and represented by Charles T. Brooks, Esq., and Assistant Attorney General Karen C. Ratigan represented the State. *Id.* Petitioner and his plea attorney, J. Richard Jones, testified at the PCR hearing. App. 47-74. In an Order dated August 27, 2013, the PCR court denied Petitioner's PCR Application in full, finding Petitioner

made the following allegations and making the following findings of fact and conclusions of law,

quoted verbatim:

## ALLEGATIONS

In his application, Applicant alleges he is being held in custody unlawfully for the following reasons:

1. Ineffective assistance of counsel:
   a. Failed to review the discovery materials "after repeated demands."
   b. Failed to "give Applicant Rule 5 and failure to advise applicant on evidence in discovery."
   c. Failed to explain "in depth the full meaning of trial."
   d. Advised the Applicant "to plea without disclosure of Rule 5."
   e. Advised the Applicant to "falsely answer the questions."
   f. Gave "erroneous advice that [the Applicant] would receive a maximum of 2 consecutive life sentences if he proceeded [to] trial."
   g. Failed to 'investigate [the Applicant]'s medications when . . . asked numerous times."
   h. Failed to "adequately prepare" the Applicant's case.
   i. Advised the Applicant he would receive two consecutive life sentences if he went to trial.
   j. After his March 9, 2011 bond hearing, the plea counsel and another individual tried to convince him to plead guilty. The Applicant "felt like he was being rushed."
   k. "[F]ailed to look inside medical history, evaluation, and life history."
   l. Failed to return [phone] calls.
   m. "Failed to discuss case with [the Applicant]."
   n. Told the Applicant "he had three choices and the choices were an open plea 30 to life, 40 years, .and a recommendation of 40 years . . . . But when [the Applicant] got in from of the judge on his sentencing day the judge said 'now you know by this recommendation of 40 years I can either give you over 40 years or under 40 years."
   o. Told the Applicant "your going to end up like my other 17 year-old client . . . because he waited to long to "plea and he got 45 years."
2. Involuntary guilty plea.
3. Prosecutorial Misconduct:
   a. "[P]rosecutor threated and forced [the Applicant] to plea."
   b. Prosecutor stated if the Applicant did not plead guilty that day, he would "give [him] the 180 days that the judge gave [him] to await another bond hearing to think bout [his] plea offer." But that, if the Applicant did not plead guilty within those 180 days he "will take [him] to trial."

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

### Ineffective Assistance of Counsel/Involuntary Guilty Plea

The Applicant alleges his guilty plea was involuntary and that he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct 366, 370 (1985); Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct 1709, 1712 (1969); Dover v. State, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. Anderson v. State, 342 S.C. 54, 57, 535 S.E.2d 649, 657 (2000) (citing Harres v. Leeke, 282 S.C. 131,318 S.E.2d 360 (1984)).

The Applicant stated he had three meetings with plea counsel but that they never reviewed the evidence in his case. The Applicant admitted, however, that he reviewed his confession with plea counsel - and that it was damaging to his case—
but the Applicant stated the confession was coerced because he was fourteen years-old at the time. The Applicant stated plea counsel did not challenge his confession and only wanted him to plead guilty. The Applicant stated plea counsel told him he would receive two consecutive life sentences if he went to trial but that the State's recommendation was that he would receive forty years or

less. The Applicant stated plea counsel should have looked into the medications he was taking. The Applicant stated he told the plea judge he was guilty of the charges and satisfied with plea counsel because that was how plea counsel told him to answer those questions. The Applicant stated that, even with the evidence against him, he wanted to go to trial.

Plea counsel testified he was the second public defender who handled the Applicant's case. Plea counsel testified they had more than three meetings and reviewed the evidence numerous times. Plea counsel testified they reviewed the Applicant's confession and that his sister's identification and statement were damaging. Plea counsel testified they had not reached the point of challenging the confession but that he had told the Applicant they could argue that he was "very young at the time" at a trial. Plea counsel testified the first public defender on this case looked into competency issues and noted the Applicant had undergone two competency evaluations. Plea counsel testified he did not have any problems communicating with the Applicant and that the Applicant never said he did not understand their discussions. Plea counsel testified he prepared the Applicant twice for the plea hearing and told the Applicant to answer the plea judge's questions truthfully. Plea counsel testified the Applicant did not waver during the plea hearing.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. This Court further finds plea counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

The Applicant admitted to the plea judge that he was guilty. (Plea transcript, p.11). The Applicant also told the plea judge that he understood the trial rights he was waiving in pleading guilty, was satisfied with counsel, and had not been coerced in any way. (Plea transcript, pp.8-11). This Court finds there is no evidence in the guilty plea transcript to support the Applicant's assertion that he was pressured into entering a guilty plea; therefore the transcript has refuted this allegation. See Stalk v. State, 375 S.C. 289, 300, 652 S.E.2d 402, 407 (Ct. App. 2007); see also Rayford v. State, 314 S.C. 46, 48-49, 443 S.E.2d 805, 806 (1994) (where transcript of guilty plea proceeding refuted applicant's claim that he did not understand the terms of a plea bargain, grant of PCR was inappropriate notwithstanding applicant's claim lawyer misadvised him). This Court finds the Applicant entered a knowing and voluntary guilty plea. See Boykin v. Alabama, 395 U.S. at 243-44, 89 S. Ct. at 1712.

This Court finds the Applicant failed to meet his burden of proving plea counsel did not review the discovery materials with him. Plea counsel testified he was not the first attorney who was appointed in this case, and that the discovery materials had already been received prior to his representation. Plea counsel testified he

reviewed the discovery materials with the Applicant and explained the State's case against him. This Court finds plea counsel's testimony is credible. This Court finds the Applicant has failed to present any credible evidence that counsel did not review and discuss the discovery materials with him before he pled guilty. This Court finds the Applicant also failed to articulate what materials he did not view and how not viewing those materials affected the outcome of his case. See Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (holding that, in a post-conviction relief proceeding, the applicant bears the burden of proving the allegations in their application).

This Court finds the Applicant failed to meet his burden of proving plea counsel did not adequately investigate his medication. The Applicant testified plea counsel did not "look into" his medications. Plea counsel testified he did not recall any issues regarding the Applicant's medication. Plea counsel noted the Applicant was evaluated twice while he was represented by his prior attorney. Plea counsel also noted the file indicated the Applicant was interested in "the Prozac defense." This Court notes the plea transcript reflects that plea counsel was aware the Applicant was taking medication on the day of the incident. (Plea transcript, p. 17). This Court finds, however, that the Applicant failed to present medical records or expert testimony about his medications and how they may have impacted either his competency or the defense case. As such, this Court cannot speculate on this matter. See, e.g., Dempsey v. State, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005) (finding that, as the applicant failed to have an expert testify at the evidentiary hearing, "any finding of prejudice is merely speculative"); Palacio v. State, 333 S.C. 506, 513, 511 S.E.2d 62, 66 (1999) (holding that, since the contents of challenged documents were not presented at the PCR hearing, the Applicant could not demonstrate how the failure of counsel to obtain these documents prejudiced the defense).

This Court finds the Applicant failed to meet his burden of proving plea counsel said he would receive two consecutive life sentences if he went to trial on these charges. This Court notes the Applicant was facing the possibility of two life sentences plus thirty years if he received consecutive maximum sentences. This Court notes the Applicant must be advised of the maximum sentence he can receive before he pleads guilty. See Pittman v. State, 337 S.C. 597, 599, 524 S.E.2d 623, 624 (1999) (finding that, before a defendant can enter a guilty plea, he "must be aware of the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the constitutional rights being waived"). Regardless, this Court notes the Applicant told the plea judge he had not been threatened in order to have him plead guilty. (Plea transcript, pp.10-11).

This Court finds the Applicant failed to meet his burden of proving plea counsel told him to falsely answer the judge's questions during the plea colloquy. Plea counsel testified that, during guilty plea preparations, he told the Applicant to answer the judge's questions truthfully. This Court finds plea counsel's testimony

is credible. This Court also finds the Applicant has failed to present any evidence or testimony in support of this allegation. See Butler v. State, 286 S.C. at 442, 334 S.E.2d at 814.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test - that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland - that he was prejudiced by plea counsel's performance. Even assuming arguendo that plea counsel committed an error or omission in his representation, the Applicant cannot prove prejudice because the State had overwhelming evidence of guilt (in the form of his statement and his sister's eyewitness identification of him as the shooter). (Plea transcript, p.14). See, e.g., Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. This Court also concludes the Applicant has failed to meet his burden of proving his guilty plea was not knowing and voluntary. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

### All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner and the Applicant was not prejudiced by counsel's representation. Furthermore, the Applicant's guilty plea was entered knowingly and voluntarily within the mandates of Boykin. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED THAT:**

1. That the Application for post-conviction relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the State.

App. 76-83. Petitioner, represented by Appellate Defender Benjamin John Tripp, filed a *Johnson*[2] Petition for Writ of Certiorari, dated April 17, 2014. ECF No. 26-3. The sole issue presented, quoted verbatim, was: "Did the PCR Court err in concluding Petitioner knowingly and voluntarily pled guilty where Petitioner raised to plea counsel the matter of his mental condition and medications, but where counsel never investigated the matter and testified he steered Petitioner towards a plea in order to resolve the case quicker?" *Id.* at 3. Petitioner also filed a pro se Response to the *Johnson* petition, ECF No. 26-5, raising the following issues on appeal:

1. Did PCR court fail to rule that trial counsel was ineffective for not investigating Appellant's medical history, evaluations, and life history?
2. Did PCR court fail to rule that trial counsel was ineffective for not investigating Appellant's confession given during interrogation which was not voluntarily made which deprived Appellant of a fair trial?
3. Did PCR court fail to rule that trial counsel was ineffective for not investigating eye witness statement when he stated that was what he was worrying about?
4. Did PCR court fail to rule that trial counsel failed to give Appellant Rule 5 and still advise Appellant to plead guilty and not investigate and prepare Appellant's case, which Appellant plead guilty without knowing the nature and crucial elements of offense, which Appellant's plea involuntary?
5. Did PCR court fail to rule that trial counsel was ineffective for allowing the solicitor to solicit about crimes that Appellant was not charged with an in indictment?

*Id.* at 2. On September 24, 2014, the South Carolina Supreme Court denied the Petition for Certiorari, granting Attorney Tripp's request to withdraw as counsel. ECF No. 26-6. The Remittitur was issued on October 10, 2014. ECF No. 26-7. This habeas Petition followed on November 20, 2014. ECF No. 1.

III.   Discussion

---

[2] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus

and stated verbatim:

> GROUND ONE:  Did PCR Court fail to rule that Counsel was ineffective for not
> investigating Appellant's medical history, evaluations, and life history?
> Supporting Facts: Appellant was abused as a child and been through tragic
> situations. Appellant's mental condition at the time of the crime was bad. Appellant
> had just got his medication changed two days before the crime. He grades in school
> were low. And comprehension level was low which is why evaluaters proposed that
> Appellant should go through another evaluation before he goes up for any type of
> sentencing to see if Appellant would be able to comprehend and understand his rights
> so he could make a decision. Appellant was 14 at time of crime and evaluations. ECF
> No. 1 at 5.
>
> GROUND TWO:  Did PCR fail to rule that trial counsel was ineffective for not
> investigating Appellant's confession during interrogation which was not voluntarily
> made which deprived Appellant of a fair trial?
> Supporting Facts: Appellant was 14 years of age at the time of the crime. He was
> alone with six officers. It was his first time being locked up (arrested), so he did not
> understand the law and thought he should do whatever the officers said. Or asked. He
> told the officers that he was on medication for mood swings and anger problems.
> Records show and prove that his education level was below average. Medical records
> show and prove that Appellant can read something or have something read to him or
> said to him and will not understand or comprehend it. *Id.* at 7.
>
> GROUND THREE: Did PCR Court fail to rule that trial counsel failed to give
> Appellant Rule 5 and still advise Appellant to plead guilty and not investigate and
> prepare Appellant's case, which Appellant plead guilty without knowing the nature
> and crucial elements which made plea involuntary?
> Supporting Facts:  Appellant's Lawyer did not investigate because he felt that just
> because Appellant had already admitted to the crime that he would not be able to
> stand trial. Appellant was never given Rule 5. Appellant plead without knowing all
> the evidence that was used against him and was advised to plea because how his
> attorney felt and because he did not understand the law. *Id.* at 8.
>
> GROUND FOUR:  Did PCR Court fail to rule that trial counsel was ineffective for
> allowing solicitor to solicit about crimes that Appellant was not charged with in an
> indictment?
> Supporting Facts: Solicitor said that the crime was not gang-related, but mentioned
> gang involvement and a hit list. These are crimes that had nothing to do with crime
> charged, so it was not suppose to be brought up. It wasn't charged in an indictment
> and Appellant had no previous crime history and Solicitor even said the crime was
> not gang-related, but he still brought forth the recommendation cause Appellant was
> involved with a gang. These charges are under Rico-Act and conspiracy to commit
> murder. *Id.* at 10.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for

13

relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue

before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his

opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice.  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

D.    Analysis

1.    Procedurally-Barred Grounds

Respondent argues that only Ground Three and a portion of Ground One in Petitioner's habeas Petition are preserved for habeas review. ECF No. 26 at 14. Additionally, Respondent maintains that Grounds Two and Four and the remainder of Petitioner's Ground One claim are

procedurally barred because they were not raised and ruled upon by the PCR court. *Id.* With regards to Ground One, Respondent argues that "the PCR court addressed Petitioner's allegation that plea counsel failed to investigate his medication, [but] the PCR court did not address the other areas that Petitioner now claims plea counsel failed to investigate." *Id.* at 20-21. Petitioner did not specifically respond to Respondent's procedural-bar arguments in his Response brief. *See* ECF No. 43.

The undersigned has reviewed Petitioner's PCR application and the transcript of the PCR hearing and finds that only Grounds One and Three were raised in Petitioner's application. *See* App. 29-42.  The undersigned has also reviewed the PCR court's Order of Dismissal and finds that Grounds One and Three were the only Grounds that were specifically ruled upon by the PCR court. *See* App. 75-83. However, Grounds Two and Four were raised to the PCR court's attention during the PCR hearing. *See* App. 54-59. Additionally, though the PCR court did not specifically address Grounds Two and Four in its order, the court made a catch-all finding concerning claims that were made but were not specifically discussed in the order. *See* App. 85 at "All other Allegations." Moreover, the undersigned finds that Ground One, in its entirety, was presented to the PCR court for review. *See* App. 76 at allegations (1.)(g.) and (1.)(k). Therefore, the undersigned will address all Grounds presented on the merits.

2. Ineffective Assistance of Counsel—Failure to Investigate Petitioner's medical history, evaluations, and life history (Ground One)

Petitioner contends that he was denied effective assistance of counsel because his plea counsel failed to investigate his medical history, evaluations, and life history. ECF No. 1 at 5. Further, Petitioner maintains that he was abused as a child and had been through tragic situations such that his "mental condition at the time of the crime was bad." *Id.* Petitioner argues that:

> [H]is medication changed two days before the crime. [His] grades in school were low and comprehension level was low which is why evaluat[ors] proposed that [Petitioner] should go through another evaluation before he goes up for any type of sentencing to see if [Petitioner] would be able to comprehend and understand his rights so he could make a decision.  [Petitioner] was 14 at the time of [the] crime and evaluations.

*Id.*

Respondent argues that Ground One is meritless because the PCR court made reasonable factual findings and reasonably applied federal law. ECF No. 26 at 21. In response to this argument, Petitioner appears to argue that had plea counsel investigated further, he would have discovered either that Petitioner was not mentally competent to make a plea or that Petitioner could have been able to assert certain successful defenses during a trial. ECF No. 43 at 4-7.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances.  In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In rejecting Petitioner's application for PCR on ineffective-assistance-of-counsel grounds, the PCR court found Petitioner failed to meet his burden of proof. App. 79. Additionally, the PCR court found that "plea counsel adequately conferred with [Petitioner], conducted a proper investigation, and was thoroughly competent in his representation." *Id.* Moreover, the PCR court specifically addressed this Ground and found:

> This Court finds the Applicant failed to meet his burden of proving plea counsel did not adequately investigate his medication. The Applicant testified plea counsel did not "look into" his medications. Plea counsel testified he did not recall any issues regarding the Applicant's medication. Plea counsel noted the Applicant was evaluated twice while he was represented by his prior attorney. Plea counsel also noted the file indicated the Applicant was interested in "the Prozac defense." This Court notes the plea transcript reflects that plea counsel was aware the Applicant was taking medication on the day of the incident. (Plea transcript, p. 17). This Court finds, however, that the Applicant failed to present medical records or expert testimony about his medications and how they may have impacted either his competency or the defense case. As such, this Court cannot speculate on this matter. See, e.g., Dempsey v. State, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005) (finding that, as the applicant failed to have an expert testify at the evidentiary hearing, "any finding of prejudice is merely speculative"); Palacio v. State, 333 S.C. 506, 513, 511 S.E.2d 62, 66 (1999) (holding that, since the contents of challenged documents were not presented at the PCR hearing, the Applicant could not demonstrate how the failure of counsel to obtain these documents prejudiced the defense).

App. 80. Furthermore, the PCR court found that Petitioner's testimony was not credible and plea counsel's testimony was credible. App. 79. Concerning the first *Strickland* prong, the PCR court found that Petitioner "failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representations of [Petitioner]." App. 82. Finally, the PCR court held that Petitioner failed to prove the second *Strickland* prong because "[he could] not prove prejudice because the State had overwhelming evidence of guilt (in the form of his statement and his sister's eyewitness identification of him as the shooter)." *Id.*

Plea counsel's PCR testimony corroborates the PCR court's finding. During the PCR hearing, plea counsel testified that Petitioner was 14 years old at the time he committed the crimes and was evaluated. *See* App. 45. Specifically, plea counsel testified that he began to represent Petitioner about a year and a half after he was arrested and after a waiver hearing. *Id.* Plea counsel testified that he took the case over from Jason Turnblad, a Chesterfield public defender, and that when plea counsel took over the case, Attorney Turnblad had begun to prepare a trial notebook that included two medical evaluations. *Id.* at 65-66. According to testimony, the State had ordered one of the medical evaluations, and Attorney Turnblad ordered the other evaluation in preparation for the waiver hearing. *Id.*

When specifically questioned about whether plea counsel was aware that Petitioner was on medication at the time of his plea, he responded that he knew Petitioner was medicated, but he did not recall "exactly what he was on." App. 71. Additionally, plea counsel testified that he and Petitioner discussed "the Prozac defense." *Id.* Plea counsel testified that in his opinion Petitioner was able to understand the conversations they had and that Petitioner never indicated that he was confused about any of their conversations—that Petitioner "is a very smart young man." *Id.*

During the guilty plea colloquy, the plea court specifically found Petitioner was competent based on a competency evaluation "that was performed by Dr. Freeman and Dr. Friarson down in Columbia. It was performed from November through December 17 2008." App. 4-5. When asked whether Petitioner's competency was an issue, plea counsel stated: "[Petitioner] had competency and criminal responsibility evaluations I believe the same time period." *Id.* When Petitioner was questioned, he indicated he understood everything the plea court had gone over; understood his attorney; and did not have any questions. App. 10.

Furthermore, Petitioner testified that he was not under the influence of any drugs, alcohol or medication and was not suffering from a condition—mental or physical—that could affect his understanding during the plea. App. 11.

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting Petitioner's ineffective-assistance-of-counsel claims, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Additionally, the PCR court found trial counsel's testimony to be credible and found Petitioner not to be credible. App. at 79. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Petitioner has failed to demonstrate that that the PCR court unreasonably misapplied the *Strickland/Hill* test concerning his allegations that plea counsel was ineffective for failing to investigate his medical history, evaluations, and life history because the record demonstrates that Petitioner's competency was evaluated twice. Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)).  Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground One.

   3. Petitioner's Confession (Ground Two)

In Ground Two, Petitioner maintains that plea counsel was ineffective in failing to investigate his confession because it "was not voluntarily made." ECF No. 1 at 7. Though Respondent maintains this issue was procedurally defaulted, the undersigned finds that Petitioner raised this issue to the PCR court's attention. Though the PCR court did not directly address the merits of Ground Two in its order, the court held that "all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this order" failed because Petitioner "failed to present any testimony, argument, or evidence at the hearing regarding such allegations." App. 82. Therefore, the PCR court found Ground Two was abandoned. Based on the issues Petitioner raised during the PCR hearing and this catch-all ruling, the undersigned will address Ground Two on the merits.

Here, Petitioner pleaded guilty, and therefore, as Respondent argues, plea counsel never had the opportunity to attempt to exclude Petitioner's confession from a trial. During the PCR hearing, when asked whether there was a basis to challenge Petitioner's confession, plea counsel testified: "I'm not sure we ever got to that point." App. 69. Further, plea counsel testified "[a]s far as the confession, I think I recall telling him that he was a very young man not only when this happened but when he confessed to it and there were probably some issues that we could talk about should we be preparing for trial." App. 70.

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting Petitioner's ineffective-assistance-of-counsel claims, or that the PCR court made objectively unreasonable factual findings. Furthermore, during the PCR hearing, Petitioner did not establish that his confession was involuntary. Therefore, there is no evidence to support Petitioner's Ground Two ineffective-assistance-of-counsel allegation.     Accordingly, Petitioner failed to demonstrate that plea

counsel's representation fell below an objective standard of reasonableness, or failed the first prong of the *Strickland* test.

Turning to the second prong of the *Strickland* test, the undersigned notes that Petitioner's sister survived after being shot by Petitioner and gave a witness statement to police. Therefore, based on the State's evidence, Petitioner cannot demonstrate he was prejudiced by plea counsel's alleged ineffectiveness. To overcome the PCR court's finding of no prejudice, Petitioner must demonstrate not only that he would have gone to trial on the murder and attempted murder charges but that a jury would have found him not guilty of the charges. *See Hill*, 474 U.S. at 59 (holding the "prejudice" inquiry for "guilty plea" cases, involves not simply whether counsel's error caused a defendant to plead guilty rather than go to trial but also a determination of whether the outcome of a trial would have been different). Therefore, the undersigned finds that even if Petitioner had opted to proceed to trial, Petitioner failed to demonstrate that he would have been exonerated.

Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Two.

### 4. Rule 5; Failure to Investigate; Failure to Prepare (Ground Three)

In Ground Three, Petitioner argues plea counsel failed to give him Rule 5 materials and did not properly investigate and prepare for Petitioner's trial. ECF No. 1 at 8. Additionally, Petitioner maintains that he pleaded guilty "without knowing all the evidence that was used against him and was advised to plea because [of] how his attorney felt and because he did not understand the law." *Id.* As previously discussed, Respondent concedes that Ground Three is properly before the court. However, Respondent argues that Ground Three should be dismissed

because the PCR court made reasonable factual findings and reasonably applied federal precedent. ECF No. 26 at 26. The undersigned agrees.

> In addressing and ruling on Ground Three, the PCR court found:
>
>> This Court finds the Applicant failed to meet his burden of proving plea counsel did not review the discovery materials with him. Plea counsel testified he was not the first attorney who was appointed in this case, and that the discovery materials had already been received prior to his representation. Plea counsel testified he reviewed the discovery materials with the Applicant and explained the State's case against him. This Court finds plea counsel's testimony is credible. This Court finds the Applicant has failed to present any credible evidence that counsel did not review and discuss the discovery materials with him before he pled guilty. This Court finds the Applicant also failed to articulate what materials he did not view and how not viewing those materials affected the outcome of his case. See Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (holding that, in a post-conviction relief proceeding, the applicant bears the burden of proving the allegations in their application).

App. 80. Plea counsel's PCR testimony corroborates the PCR court's findings. During the PCR hearing, plea counsel testified that by the time he became Petitioner's attorney, Petitioner's first attorney had already filed a Rule 5 *Brady* motion. App. 68. It was plea counsel's belief that Petitioner's first attorney had already received all of the Rule 5 materials prior to plea counsel's involvement and had put the materials into a trial notebook. *Id.* Plea counsel also testified that it was his recollection that he went to see Petitioner at DJJ four or five times and in addition to those visits he spoke to Petitioner numerous times on the phone because a social worker would arrange the phone calls. *Id.* Moreover plea counsel testified that they "certainly discussed what evidence would be presented if there were a trial." App 69. During his own PCR testimony, Petitioner admitted to meeting with plea counsel on three occasions. App. 57. Turning to the guilty plea colloquy, Petitioner testified that he was satisfied with his representation and agreed that plea counsel discussed trial issues with him and answered all his questions. App. 8. Additionally, Petitioner testified that he was satisfied with plea counsel's help. App. 9.

The undersigned finds that habeas relief is not warranted because the PCR court did not incorrectly apply federal law when evaluating Petitioner's Ground Three or make a decision that was based on an unreasonable determination of the facts. Rather, the facts indicate that the State provided Petitioner's first lawyer with the evidence against him, and plea counsel met with and discussed the evidence with Petitioner. Furthermore, this credibility finding by the PCR court is entitled to deference. *Wilson v. Ozmint,* 352 F.3d at 858-859. Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d at 850. Because this court cannot conclude that the PCR court's determination on the issue was contrary to, or an unreasonable application of, clearly established federal law, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Three.

5.    Solicitor's Comments (Ground Four)

In Ground Four, Petitioner argues that plea counsel erred in failing to object to the Solicitor's statement concerning crimes for which he was not charged. ECF No. 1 at 10; App. 55-56. Though Respondent maintains this issue was procedurally defaulted, the undersigned finds that Petitioner raised this issue to the PCR court's attention. The PCR court did not specifically address this issue. However, as stated in Ground Two, the PCR court found that "all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this order" failed because Petitioner "failed to present any testimony, argument, or evidence at the hearing regarding such allegations." App. 82. Therefore, the PCR court found Ground Four was abandoned. Based on the issues Petitioner raised during the PCR hearing and the catch-all PCR court ruling, the undersigned will address Ground Four on the merits.

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting Petitioner's ineffective-assistance-of-counsel claims, or that the PCR court made objectively unreasonable factual findings. The undersigned has thoroughly reviewed the plea transcript and notes the Solicitor's reference to Petitioner's alleged gang membership. The Solicitor made this statement in what appears to be an attempt to justify its recommendation of a 40-year sentence to the plea court. The Solicitor stated:

> I'm not saying that the incident was gang related regarding his mother and unborn child -- unborn sister and his 12 year-old sister, but -- and to his credit throughout the evaluation he was up front with the fact that he was very deeply involved with the Crips Gang. He was involved with them from the standpoint of selling drugs, dealing drugs. Basically, he was set king and had control over people under him. He was up front about that. . . .
>
> [A]t the time law enforcement searched the house with his father's, his natural father's permission, they found a lot of gang related literature. But they also found what amounts to be a hit list. People, several people that he had planned on killing.
> Now, with that said I understand that was three years ago. I can't attest to how he is now. . . .I think those are things that we would ask the Court to take into consideration so that it will be clear that the request for the 40 years is coming from the State.

App. 22-23.

The undersigned finds that during the PCR hearing, Petitioner did not establish that these statements would not have been considered had an objection been lodged. Moreover, this was a hearing before the plea court and not a trial. Therefore, there is no evidence to support Petitioner's Ground Four ineffective-assistance-of-counsel allegation. Accordingly, Petitioner failed to demonstrate that plea counsel's representation fell below an objective standard of reasonableness, or failed the first prong of the *Strickland* test.

Turning to the second prong of the *Strickland* test, the undersigned notes that based on the State's evidence, Petitioner cannot demonstrate he was prejudiced by plea counsel's alleged ineffectiveness. To overcome the PCR court's finding of no prejudice, Petitioner must demonstrate not only that he would have gone to trial on the murder and attempted murder charges but that a jury would have found him not guilty of the charges. *See Hill*, 474 U.S. at 59 (holding the "prejudice" inquiry for "guilty plea" cases, involves not simply whether counsel's error caused a defendant to plead guilty rather than go to trial but also a determination of whether the outcome of a trial would have been different). Additionally, the undersigned notes that Petitioner could have received life sentences for the murder convictions, and the State recommended a 40-year sentence. However, the plea court imposed a 36-year sentence instead. App. 8; 26. Therefore, the undersigned does not find that Petitioner was prejudiced in the sentences he received as a result of any statements the Solicitor made during the plea colloquy.

Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Four.

IV.    Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


November 17, 2015                                        Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**